**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDRES VALDEZ,** : | |
| Plaintiff : | |
| : | **CIVIL ACTION NO. 3:13-0896** |
| v. : | |
| : | **(JUDGE MANNION)** |
| **MARY LOU SHOWALTER, et al.,** : | |
| Defendants : | |

**MEMORANDUM**

**I.    BACKGROUND**

Andres Valdez, an inmate confined in the State Correctional Institution, Huntingdon ("SCI-Huntingdon"), Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. No. 1) The named Defendants are former SCI-Huntingdon Corrections Health Care Administrator Mary Lou Showalter; SCI-Huntingdon Superintendent Tabb Bickell; Secretary for the Department of Corrections John Wetzel; and Nurses Trice, Hartzler, Dively and Chew. Id.

Presently before the Court is a motion to dismiss filed on behalf of Defendants Showalter, Bickell, Wetzel, Trice, and Hartzler.[1] (Doc. No. 11). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendants' motion to dismiss will be granted.

---

[1] Defendants Angel Dively and Tanya Chew are not employees of the Department of Corrections. Service of process has never been effectuated on these Defendants and, as such, no responsive pleading has been filed on their behalf.

## II. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part

analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir.2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed Appx. 183 (3d Cir.2008).

### III.  **Allegations in Complaint**

On September 20, 2012, Plaintiff claims that he fell in the main exercise yard and "was rushed to the hospital for an emergency evaluation that was conducted by licensed practical nurse Trice, who took all his vital signs and

referred him to the attending physician's assistant", however, he was "only treated for the wound sustained from the fall and ordered to submit to a 'Tetanus/Diphtheria Booster Injection'." Id. Valdez states that "the initial problems of dizziness, numbness in the left arm, nausea and loss of coordination was never treated and/or addressed by the Physician's Assistant Trice" and "Valdez was told to return to his cell." Id. Plaintiff alleges that "this misdiagnosis and improper and inadequate medical treatment caused him to suffer a multiple life-threatening, debilitating medical problem." Id.

On September 24, 2012, Plaintiff was seen by Nurse Angela Dively. He states that "after complaining of being disoriented, another neurological assessment was made that completely ignored the vital signs of a possible heart attack." Id. He claims that he was "given another CAT scan, and on September 30, 2012, upon being reviewed by Nurse Hartzler, due to the debilitating pain he was enduring and suffering, she evaluated him and checked for any vital signs and ordered a Orthostatic Blood Pressure Test" and told him that he "needed to put in another sick-call slip if he required further treatment." Id.

On October 1, 2012, Plaintiff was seen by Nurse Tanya Chew, who Plaintiff states told him "that he needed to sit up or lay down because there was nothing she could do until the results of the last CAT scan returned and if the symptoms worsen that he was to scream out 'Man Down' (this is the general population stress call) since there is no call buttons in the cells for

medical or any emergency." (Doc. No. 1, complaint at ¶ B).

Plaintiff states that "on October 2, 2012, after numerous requests to the staff complaining of nausea and dizziness, along with severe headaches, Valdez was allowed to go to the in-house hospital where he was examined by Dr. Coles, who stated that something was seriously wrong and immediately 'ordered' Valdez to be sent to the Blair Medical Center, where he under went numerous tests, including but not limited to a blood test, and after over two hours of examinations they couldn't find anything and transferred him to the Altoona Regional Health System, where they immediately gave him another CAT scan, discovering that Valdez had a 100% blockage of a major artery that required him to undergo surgery." Id. Valdez claims that it was "this thorough diagnosis that found that Valdez was also a 'High Risk Cardiac Profile Patient' suffering from among other things, 'Hypertension, Proxysmall Atrial Fibrillation and Angina'." Id. Plaintiff was "discovered to have a 'Prolapsed Mitral-valve in his heart, and may experience persistent Atrial Fibrillation that can lead to a total heart attack and stroke." Id.

On October 11, 2012, Plaintiff filed Grievance No. 432208 in which he states the following:

> On 9-20-12 I just "fell out" in the yard for unknown reasons, losing consciousness and banging my head on the concrete; I was taken to medical where they ONLY took my blood pressure and cleaned the superficial head wound. They did NOT, however, do anything to discover or explain WHY I suddenly lost consciousness in the first place; said "nothing is wrong." When I persisted, was told may be taken out for exam in 3 weeks time. On 9-30-12 had to get pass to medical due to severe headache; again took blood

> pressure and told couldn't do anything. I insisted that, because I am in good condition and try to take care of myself, I KNEW <u>something</u> had to be wrong; told to get on "sick call." 10-1-12, went to sick call, reiterated concern for headaches and knew something HAD to be wrong with me; initially told would get examined in a couple of weeks; because I could FEEL something more serious was going on with me, I angrily said that I could be DEAD by then! Change of mind and on 10-2-12, taken outside for PROPER exam; discovered had <u>100% blockage in left main coronary artery</u>!! Had to get operated upon immediately to get the valve open; doctor said I could have died in my sleep at any time while trying to get a proper exam at SCIH.

(Doc. No. 14 at 14, Grievance No. 432208).

On October 25, 2012, Plaintiff's Grievance No. 432208 was denied by Defendant Showalter, based on the following:

> Your grievance dated 10-11-12 has been received and investigated. You claim that the staff at SCIH and or the medical "service" contracted, recklessly endangered your life.
>
> Upon review of your medical record you were seen on an emergency pass for passing out in the yard on 9-20-2012. You were evaluated by a Licensed Practical Nurse who took your vital signs and referred you to the Physician's Assistant who reviewed your vital signs and evaluated your wound and ordered you a Tetanus/Diphtheria booster injection. You were again seen on 9-24-2012 complaining of double vision, dizziness, nausea and loss of coordination. The Physician's Assistant that evaluated you documented that you were alert and oriented and neurological assessment was normal. She ordered you a CAT scan. On 9-30-2012 you were again seen on an emergency pass complaining of dizziness. The Licensed Practical Nurse who evaluated you checked orthostatic blood pressure as well as your other vital signs which were all stable and referred you to sick call for the next morning. On 10-1-2012 you were seen on sick call by another Physician's Assistant. You complained of dizziness that happens periodically usually when you sit up or lay down. You were advised at that visit to await the CAT scan and return if your symptoms worsen. On 10-2-2012 you were called down by the Physician's Assistant for further evaluation and referred to the

> Physician at which time you were sent to the outside hospital. Your first complaint of a headache was with your visit with the doctor on 10-2-2012. Your complaints when you were seen by the physician included headaches, chest pain, leading the physician to order an EKG which was abnormal leading to the decision to send you to the hospital at that point. Up to that point your complaints consisted of dizziness, nausea, and visual changes. You had never mentioned you were having headaches or chest pain.
>
> Your grievance is without merit and is denied. You were evaluated and treated appropriately each time you were seen in medical. No monies will be awarded via this grievance.

(Doc. No. 14 at 31, Initial Review Response).

On October 29, 2012, Valdez appealed the denial of his grievance to Superintendent Bickell, (see Doc. No. 14 at 16, Grievance Appeal).

In a response dated November 20, 2012, Superintendent Bickell upheld Health Care Administrator Showalter's denial of Grievance No. 432208, finding the following:

> In reviewing your grievance and appeal, I note that your medical concerns were appropriately addressed by Ms. Showalter. In your appeal, you repeat your original claims but add that Ms. Showalter is covering up for any wrongdoing or negligence and by avoiding expenditures on prisoners is how they make their profit. You further claim that the first time you complained about headaches is irrelevant and incorrect.
>
> Ms. Showalter reviewed you medical record and found that you only complained to the doctor about a headache and chest pain on 10/2/12. At which time the doctor ordered the EKG and subsequently you were taken to the hospital that day. Prior to that day your only complaints were dizziness, nausea and visual changes, but all of your neurological assessments, vital signs, and Orthostatic blood pressures were stable and normal; therefore since you did not mention the headaches or chest pains you were only ordered a CAT scan. As Ms. Showalter inferred,

> had these other symptoms been revealed initially, a diagnosis **may** have been found quicker; therefore I must uphold the grievance officer's response, as the Medical staff did see you several times and addressed the symptoms you presented to them and Ms. Showalter is not covering for any wrong doing or negligence or avoiding expenditures in lieu of profits, as you claim.
>
> In closing, I can only reiterate that I uphold the response provided by the grievance officer. You grievance is found to be without merit.

(Doc. No. 14 at 18, Facility Manager's Appeal Response (emphasis in original)).

Plaintiff appealed the Facility Manager's Response to the Secretary's Officer of Inmate Grievance and Appeals, where it was denied on March 27, 2013. (Doc. No. 14 at 24, Final Appeal Decision).

On April 9, 2013, Plaintiff filed the above captioned action in which he claims that "for well over four years of constant complaints of chest numbness in his left arm and leg, they concluded with each evaluation and examination that it might only be a pinched nerve and that Plaintiff had nothing to worry about, and that if the pains continued that he needed to put in another sick call slip." (Doc. No. 1, Complaint at ¶ A). Plaintiff contends that "the actions by the herein Defendants were deliberately displaying negligence, that beyond indifferent that it borders on malicious intent, with criminal overtones of cruel and unusual punishment that intentionally destroyed his health and caused him injury that he will have to suffer the rest of his life." (Doc. No. 1, Complaint at ¶ F). For relief, Plaintiff seeks compensatory and punitive damages, as well

as injunctive relief, for Defendants' alleged "intentional infliction of physical and mental torture by the denial of proper medical treatment that now force him to be subjected to a regiment of medications due to [Defendants'] misdiagnosis, negligence and deliberate indifference." Id.

## IV.  Discussion

### A.  Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical

10

prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The allegations in Plaintiff's complaint, and his supporting documentation, clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff was immediately seen by medical personnel right after his fall in the prison yard. Additionally, as soon as the prison medical personnel realized that his symptoms were more serious than initially described, they referred him to the Physician who

11

immediately transferred Plaintiff to the hospital, where he was admitted and treated.

At best, Plaintiff's complaint demonstrates his disagreement with medical personnel. Though he may have wished that the nurses had diagnosed him as a high risk cardiac patient earlier, his disagreement with the course of action that they took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir.1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)).[2] This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the

---

[2]Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Valdez does not suggest that the nurses were aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir.2004) (stating that while a pro se complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it).

prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim.³ See White, 897 F.2d at 108-110.

Moreover, to the extent that Plaintiff alleges that "for well over four years of constant complaints of chest numbness in his left arm and leg, they concluded with each evaluation and examination that it might only be a pinched nerve and that Plaintiff had nothing to worry about, and that if the pains continued that he needed to put in another sick call slip", aside from making such a broad allegation, Plaintiff offers no further facts to support his claim, nor do any of his supporting documentation demonstrate that he raised this claim in his grievances. Regardless, it is clear from Plaintiff's own allegation, that he was seen and evaluated each time he complained. There is no indication that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. The fact that Plaintiff's heart condition was not immediately discovered does not rise to the level of an Eighth Amendment violation. Mere misdiagnosis or negligent

---

³Although Defendants Chew and Dively have never been served with the complaint, and no response has been filed on their behalf, based on the above discussion, the Court finds that these Defendants are also entitled to dismissal pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. Durmer, 991 F.2d at 67. Once again, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110.

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir.2002). Since it is clear from Plaintiff's complaint, and supporting documentation, that Plaintiff received adequate medical treatment through his transfer to an outside hospital on October 2, 2012, and merely disagrees with the treatment he received during this time, the Court finds that amendment on these claims would be futile.

### B. Claims against Defendants Bickell, Wetzel and Showalter

Defendants argue that Plaintiff fails to state a claim against Defendants Bickell, Wetzel and Showalter because the complaint reveals that they lack any personal involvement in the wrongs, and Plaintiff's allegations against these Defendants are based solely upon their supervisory roles. (Doc. 12, at 8-9). The Court agrees.

Local government units and supervisors typically are not liable under

§1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing Rode). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir.1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir.1995). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A §1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. "[I]n an

official-capacity action, ... a governmental entity is liable under §1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to Defendants Wetzel, Bickell and Showalter[4], a review of the Complaint confirms that other then being listed as Defendants there are no specific assertions that any of these Defendants had any personal involvement in the purported violations of Plaintiff's rights under the Eighth Amendment. Rather, the claims asserted against these Defendants are premised either upon their respective supervisory positions within the DOC or their handling of Plaintiff's subsequent institutional grievances and appeals.

---

[4]To the extent that Defendant Showalter is sued in her capacity as Grievance Coordinator, for denying Plaintiff's grievance, and Corrections Defendant Bickell is sued for upholding the denial on appeal, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir.2005) (involvement in post-incident grievance process not a basis for §1983 liability); Pryor-El v. Kelly, 892 F.Supp. 261, 275 (D.D.C.1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec.19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Thus, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F.Supp. 922, 931–32 (M.D. Pa.1992), aff'd, 980 F.2d 722 (3d Cir.1992).

Based upon an application of the above standards, such allegations are insufficient to satisfy the personal involvement requirement standard of Rode. Accordingly, Defendants Wetzel, Bickell and Showalter are entitled to entry of dismissal. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 24, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0896-01.wpd